UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| KEITH HUGHES, | ) | CASE NO. 4:06 CV0631 |
| | ) | |
| Petitioner, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| WARDEN T.R. SNIEZEK, et al., | ) | |
| | ) | |
| Respondents. | ) | |

On March 17, 2006, pro se petitioner Keith Hughes filed the above-captioned petition for a writ of habeas corpus under 28 U.S.C. § 2241 against Warden T.R. Sniezek at the Federal Correctional Institution Elkon ("F.C.I. Elkton"), A. Fekete, M. Morse, D. Steiner, J. Hayes, DHO S. Biafore and T. Hulett. Mr. Hughes, who is incarcerated at FCI Elkton in Ohio, claims he was punished for behavior that did not qualify as an infraction. For the reasons stated below, the petition is denied and this action is dismissed pursuant to 28 U.S.C. § 2243.

*Factual and Procedural Background*

Mr. Hughes was designated for placement in a prison camp in November 2004. He was summoned to the center office to sign paperwork so that his furlough to the camp would take effect on December 16, 2004. On the date he reported to the office, Mr. Hughes was charged with

making a sexual proposition or threat to another in violation of Code 206 and giving or offering an official or staff member a bribe, or anything of value, in violation of Code 216. Without restating all of the underlying facts surrounding the incident which prompted his hearing, Mr. Hughes asserts that he never made a sexual proposal and never offered an official or staff member a bribe.

In order to fully explore the relevant facts, the court must first look to the Incident Report prepared on December 17, 2004, which is attached to the petition. Under "Description of Incident" section 11 of the Report, Unit Secretary Julie Fitzgerald set forth that on December 16, 2004, at approximately 3:20 p.m., Mr. Hughes entered the center office at F.C.I. Elkton to sign paperwork. When he completed the process he left the office, walked past Ms. Fitzgerald's office and placed a red rose made of toilet paper on a ledge in her sight line. She stated that while Mr. Hughes was placing the rose on the ledge he looked towards her and "gave me a look indicating the rose was for me." She then placed the rose in a bag, put on it on the desk of Mr. Fekete and advised that it was given to her by Mr. Hughes. The incident was identified as Making Sexual Proposals or Threats to Another in violation of Code 206 and Giving or Offering an Official or Staff Member a Bribe, or Anything of Value in violation of Code 216. Mr. Fekete directed Mr. Hughes's placement in the Special Housing Unit.

A copy of the report was delivered to Mr. Hughes on December 17, 2004 at 10:00 a.m. Under "Incident" section 9, the code violation 206 was crossed out by hand and replaced with Code 312 and Code 216 was replaced with Code 305. After Mr. Hughes received the Report he responded that he was "not guilty" and the matter was referred to the Disciplinary Hearing Officer (DHO) based on the severity of the report.

The DHO elected to reduce Codes 206 and 216 to Code 312 and Code 305 based on

2

information contained in section 11 of the incident report. He then issued a determination on January 2, 2005 finding that petitioner committed the prohibited act of Possession of Anything Not Authorized and Insolence in violation of Codes 305 and 312. Mr. Hughes was sanctioned with the loss of 13 of Good Credit Time, 15 days disciplinary segregation for violating Code 305 and 15 days disciplinary segregation, the loss of 13 days GCT, a change in quarters and loss of commissary privileges for 180 days for violating Code 312.

Mr. Hughes appealed the DHO's decision by filing a Request for Administrative Remedy. In his request, he denied the charges against him and claimed that the reporting officer would have immediately requested assistance if she felt threatened. In addition, he maintained that the offense codes on his original incident report were improperly changed.

In a response dated April 6, 2005, Regional Director D. Scott Dodrill partially granted Mr. Hughes's request and remanded the Code 312 disciplinary charge for additional investigation. Mr. Dodrill still found, however, that the decision of the DHO regarding a Code 305 violation was based upon the greater weight of evidence and that the sanctions were commensurate with the prohibited act.[1]

An amended DHO Report was issued "per appeal number 369383-R1" on April 23, 2005. In his amended report, the DHO considered Mr. Hughes' explanation that another inmate made the rose for him and he simply set it down on the ledge in order to sign paperwork. In response, the DHO noted that the reporting officer stated that Mr. Hughes had already signed his

---

[1] Mr. Hughes fully exhausted this issue to the National Inmate Appeals Administrator Harrell Watts, who issued a response on June 29, 2005. He denied the appeal in its entirety finding that Mr. Hughes's argument that the rose could not be considered contraband because it was made with toilet paper, which is authorized, "overwhelmingly flawed."

3

paperwork before he left the office and returned fifteen minutes later to place the rose on the ledge. Considering the statements of the reporting officer and the contradictions in Mr. Hughes's version of the facts, the DHO determined that Mr. Hughes willfully violated Code 305. The DHO elected to reduce Code 216 to Code 305 and drop Code 206 based on information contained in section 11 of the incident report. A sanction of 15 days disciplinary segregation and a loss of 13 days Good Credit Time were imposed.

In his present petition, Mr. Hughes complains tha he was "recharged under the same paper work in which the original incident report has been manipulated to fit Code 305 and 312." (Pet. Attach. A. at 1.) He adds that he never violated Code 305 because it "defines 'not authorized or unauthorized as possession of anything not authorized for retention, however toilet paper is given through regular channels and sold on the commissary." Id. Because the code does not state that it is a violation to convert an otherwise authorized item, it is Mr.Hughes's reasoning that he is not in violation of Code 305. He complains also that even though Code 316 was dismissed, he has yet to receive an incident report for violating Code 305. As such, he requests suspension of sanction 305, restoration of 13 days GCT and an expungement of the Incident Report from his record.

*28 U.S.C. § 2241*

Any challenges to a prison misconduct proceeding resulting in the loss of sentence credit must allege a federal constitutional violation in order to be cognizable in a federal habeas corpus action. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). Here, Mr. Hughes alleges that the respondents engaged in an "intentional use of abuse of discretion." Moreover, the respondents' level of "unprofessionalism and unauthorized conduct" conflicted with 28 C.F.R. § 541.13.

It is apparent that Mr. Hughes has not stated a violation of any constitutional right.

To the extent he claims the respondents have failed to comply with the relevant section, he has not set forth a cognizable claim.  The code section to which he refers, "§ 541.13 Prohibited acts and disciplinary severity scale," simply outlines the appropriate sanctions for each prohibited act by code number and severity.   For a Code 305 violation, categorized as Moderate, the regulations provide the following guidance: "Moderate category offenses. The Discipline Hearing Officer shall impose at least one sanction A through N, but, except as noted in the sanction, may suspend any sanction or sanctions imposed." 28 C.F.R. § 541.13(a)(3).  Both the loss of up to 15 days earned good credit time and disciplinary segregation for up to 15 days are  listed as possible sanctions from A to N under Moderate Offenses.  The fact, therefore, that Mr. Hughes lost 13 days of GCT and was placed in disciplinary segregation for 15 days for a Code 305 violation does not compromise his rights inasmuch as these sanctions fall squarely within the parameters of the regulations.

Based on the foregoing, the petition is dismissed pursuant to 28 U.S.C. § 2243.  The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

S/Peter C. Economus - 6/14/06
PETER C. ECONOMUS
UNITED STATES DISTRICT JUDGE